**EXHIBIT "A"**
**FORENSIC PSYCOLOGICAL EVALUATION REPORT**

See attached.

**SCOT D. MACHLUS, Ph.D., ABPP**

Board Certified in Clinical Psychology

CLINICAL AND FORENSIC PSYCHOLOGY

10006 Cross Creek Blvd., #521
Tampa, FL 33647
(727) 992-2098
smachlusphd@gmail.com

## FORENSIC PSYCHOLOGICAL EVALUATION REPORT

**Name:** Vincent Anthony Principe

**D.O.B:** ██████████████ (Age 55)

**Case Name:** State of Florida vs. Vincent Anthony Principe
**Case Number:** 2:26-cr-11-KCD-DNF

**Date of Report:** June 12, 2026

### REFERRAL INFORMATION

Vincent Principe was referred by his attorney, Assistant Federal Defender G. Ellis Summers, Jr., for a comprehensive forensic psychological evaluation to render an opinion on possible mitigating circumstances applicable to his case. Mr. Principe is charged with Engaging in Illicit Sexual Conduct in Foreign Places.

### SOURCES OF INFORMATION

**Interviews and Testing**

- Forensic psychological interview and testing with Vincent Principe at the Charlotte County Jail, Punta Gorda, Florida – April 27, 2026 (2 hours 10 minutes)
- Telephonic interview with Caroline Campbell – June 9, 2026 (20 minutes)
- Telephonic interview with Victoria Gosselin – June 9, 2026 (10 minutes)

**Tests Administered**

- Minnesota Multiphasic Personality Inventory – Third Edition
- Autism Spectrum Rating Scales Adult (ASRS Adult)
- Autism Spectrum Quotient

**Documents and Materials Reviewed**

- United States District Court Criminal Complaint
- United States District Court Application for a Warrant by Telephone or Other Reliable Electronic Means
- Transcript of interview with Vincent Principe by law enforcement
- Pretrial Services Report
- Sturdy Memorial Hospital
- Social Security Disability records

### INFORMED CONCENT

Prior to the initiation of the evaluation, Mr. Principe was informed about the nature and purpose of the assessment, and the limits of confidentiality. He was told that the

assessment was being conducted at his attorney's request and that the evaluation information would be shared with his attorney. He was also informed that the assessment information could be shared with the United States Attorney and/or used in court, per his attorney's authorization. Mr. Principe verbalized his understanding of the evaluation process and consented to participate.

## BACKGROUND
FAMILY HISTORY

Mr. Principe reported that his parents divorced when he was one or two years old. He stated that his father, Vincent Principe, Sr., died in 2006. He indicated that he never had a close relationship with his father due to his father being a paranoid schizophrenic. He noted that his father heard voices and would talk to himself. He said that after his parents divorced, his father lived with his father's mother, stayed in his room, and smoked cigarettes. He recalled that his father was disconnected and that, as a child, he felt his father did not care about him.

Mr. Principe described his relationship with his mother, Victoria Gosselin, as fair. He noted that she is 75 and lives in Atlanta. He indicated that she used to contact him every day on Facebook Messenger until he started using a different Facebook account. He stated that she would then contact him by email. He indicated that he did not have a close relationship with her during childhood either.

Mr. Principe reported that he has a full biological sister, Liana Principe, who is 18 months older than him. He described their relationship as poor and said he has rare contact with her. He said that she is "snappy," and "accusatory," and used to call him names. He also described her as being impatient and opinionated. He described his relationship with her during childhood as being neutral. He said that he did not have contact with her while he was living in the Philippines.

Mr. Principe reported that his mother was married to George Bormet when he was between approximately 9 and 19 years old. He described their relationship as being "turbulent," with his stepfather being "gruff" and frequently yelling at him about chores and work.

Mr. Principe reported that he has a half-sister, Caroline Campbell, who is 40 years old. He described their relationship as being "okay, average," and "not close." He noted that she has been helping out while he has been incarcerated by doing things such as helping his common law wife, Laisa, connect with him in jail.

Mr. Principe reported that he has a maternal half-brother, Gary Oakes. He indicated that they were close growing up but have no contact now. He described his half-brother as being "arrogant" and having "a sense of superiority."

Regarding family history of mental illness, in addition to reporting that Mr. Principe's father has a history of Schizophrenia, Mr. Principe stated that he has a maternal uncle, Kenneth Peck, who was also diagnosed with Schizophrenia.

Mr. Principe reported that he ran away at the age of 15. When asked, he stated that he did not know why he ran away. He then added that he was rebellious and wanted to be independent. He noted that after running away, he started committing crimes, such as breaking into buildings, breaking into cars, and setting fires. When asked why he committed these acts, he said he did so to "rile people up" and get attention. When asked to further explain, a clear response could not be obtained.

RELATIONSHIP AND CHILDREN HISTORY
Mr. Principe reported that he moved from Florida to the Philippines in 2015. He stated that he moved because he wanted a change; he had been chatting with a Filipino woman online and thought living in the Philippines was inexpensive.

Mr. Principe reported that he had been living in the Philippines with his common-law wife, Laisa Taddih, and their eight-year-old son, Victor Principe, before traveling back to the United States, where he was arrested. He stated that he has been with Laisa for approximately 11 years, and living together for approximately 10 years. He described their relationship as being good. He stated that she understands his mental condition and is patient and not judgmental. He described his relationship with his son as being good. He noted that he would play with his son and that they would go out to eat together.

Mr. Principe reported that approximately one and a half months before his arrest, he had moved back to the United States and was living in a rented trailer in Arcadia. He stated that he returned to the United States to address Social Security and credit card matters.

Mr. Principe reported that he has never been married and does not have any other children. He stated that the longest relationship prior to being with Laisa, was for two years, between 2010 and 2012.

Mr. Principe reported that he likes being alone. He noted that he has felt suffocated while being with Laisa, but stays with her because they have a child together and she is a good cook. He indicated that they have had breaks in the relationship, with her going to her home province to be with her family and him returning to the United States for various reasons.

SOCIAL HISTORY
Mr. Principe reported that he has no close friends. He stated that while living in the Philippines, he would spend his time watching television and YouTube videos.

EDUCATION HISTORY
Mr. Principe reported that he did average in school, although he noted he dropped out of school in the 11th grade after becoming involved with the legal system. He stated that he earned his GED in 1994 after attending the Community College of Rhode Island.

Mr. Principe reported that he earned an associate degree in electronics from the New England Institute of Technology in 1998.

Mr. Principe reported that his IQ was tested at the Department of Mental Health in Massachusetts in the late 1990s, and that his score was between 116 and 124.

WORK HISTORY
Mr. Principe reported that he has been receiving disability benefits since 1995.  He stated that in 2005, he was diagnosed with Asperger's Syndrome.  He said that symptoms that he has include having an emotional disconnect with people, isolating, and not engaging in small talk with others.  He stated that he tries to suppress emotions and think logically like a Vulcan on Star Trek.

Mr. Principe reported that in 2018, while living in Hawaii, he worked for four months as a warehouse driver and as an apprentice with an electrical company.  He also indicated that in 1998, he worked for a couple of months as a computer technician.

MEDICAL HISTORY
Mr. Principe reported that he has an abdominal hernia.  He stated that he does not take any medications in jail.

MENTAL HEALTH HISTORY
Mr. Principe reported that after he became involved with the legal system in 1986, he received treatment at the Massachusetts Department of Youth Services.

Mr. Principe reported that after being accused of threatening his girlfriend and a judge, and violating a Protection Order in Norfolk County, he was sentenced to five years in prison.  As part of his sentence, he stated that he was hospitalized between 1999 and 2003 in the Bridgewater State Hospital in Plymouth County, Massachusetts.

Mr. Principe reported that he was then hospitalized between 2003 and 2005 in the Department of Health in Westborough, Massachusetts.   He said that following this hospitalization, he lived in a group home called the Milton Street House, in Dedham, Massachusetts.

Mr. Principe reported that while at the Bridgewater State Hospital and Westborough, he was prescribed Risperdal and Seroquel.

Mr. Principe indicated that while living in the group home, he received outpatient mental health treatment in Norwood, Massachusetts.

Mr. Principe reported that in 2010 and 2011, he also received outpatient mental health treatment related to feeling depressed about problems he was having with a girlfriend.  He stated that he received the treatment at Bristol County Mental Health in Attleboro, Massachusetts.

Mr. Principe denied present feelings of depression, although he indicated that he thinks about committing suicide.  He stated that he has feelings of anxiety about his legal situation.

SUBSTANCE USE HISTORY
Mr. Principe reported that when he was living in the Philippines, he was drinking two or three times a week.  He stated that when he drank, he would usually have between a pint and a half-liter of rum or vodka.

Mr. Principe reported that he has has not smoked marijuana since the 1990s.  *The PSR report indicated that he reported daily use of a THC vape with his last use occurring on December 14, 2025.*  He stated that as a teenager, he experimented with LSD, mescaline, and psychedelic mushrooms.

LEGAL HISTORY
The PSR report documents Mr. Principe's legal history from ages 14 to 28.  His charges include breaking and entering, larceny, burning a building, malicious destruction of property, possession of a firearm, attaching wrong motor vehicle plates, insurance violation, receiving stolen property, and threatening behavior.

**MENTAL STATUS**
Mr. Principe was oriented to person, place, date, and situation.

Mr. Principe's mood was generally appropriate to the evaluation situation, with his affect being flat. At times, he exhibited inappropriate laughter, such as when discussing his poor relationship with his half-brother and his lack of close friends.  It was also noted that he made an odd comment, initially stating he was 55 instead of 61. When asked why he gave the wrong age, he said he was joking.

Mr. Principe's attention, concentration, and memory functioning were appropriate.

Mr. Principe's conversation was generally non-spontaneous.  His answers to questions were relevant and coherent.

Mr. Principe reported that he does not have a history of hallucinations.  There were no indications that he was responding to internal stimuli during the evaluation.  Delusional thought content was not noted.

Mr. Principe stated that he had thoughts of hurting himself but no plan or intent.  He said that he does not have thoughts of hurting others.

**TESTING**
**PERSONALITY TESTING**
**Minnesota Multiphasic Personality Inventory – 3rd Edition (MMPI-3)**
Mr. Principe was administered the Minnesota Multiphasic Personality Inventory - 3 (MMPI-3). The MMPI-3 was developed to assess major symptoms of psychopathology, personality characteristics, and behavioral patterns.

<u>Protocol Validity</u>
The MMPI-3 contains validity scales that help to identify the manner in which a person approaches taking the test. Results on the validity scales did not suggest an inconsistency in responses, or the under-reporting or over-reporting of psychological symptoms.

<u>Substantive Scale Interpretation</u>
*Thought Dysfunction*
Mr. Principe reported significant persecutory ideation, such as believing that others seek to harm him.

*Emotional Dysfunction*
Mr. Principe reported feeling hopeless and having suicidal ideation.

*Behavioral Dysfunction*
Mr. Principe reported a history of involvement with the criminal justice system and failing to conform to societal norms and expectations. He also reported having a history of juvenile conduct problems.

Mr. Principe reported engaging in compulsive behavior.

*Interpersonal Functioning*
Mr. Principe reported having conflictual family relationships and feeling a lack of support from family members. He reported disliking people and being around others, not enjoying social events, and avoiding social situations. He is likely to be socially introverted.

*It is noted that characteristics of social introversion and compulsivity are common in individuals with Autism Spectrum Disorder (ASD).*

*There were no elevations on scales associated with aggression or substance abuse problems.*

**TESTING FOR AUTISM**
**Autism Spectrum Rating Scales – Adult (ASRS Adult)**
The ASRS Adult was administered to Mr. Principe. The ASRS Adult is an assessment tool that helps identify symptoms, behaviors, and associated features of Autism Spectrum Disorder (ASD) in adults.

Results on the validity scales did not indicate an inconsistency or irregular responding. There was also no indication of an exaggerated response style. Results are therefore considered to be valid.

Ratings on the Total Score scale indicate the extent to which the individual's behavioral characteristics resemble those of individuals diagnosed with Autism Spectrum Disorder. Results indicated that ratings on this scale yielded a T-score of 77 (90% Confidence Interval = 72–79), ranking at the 99th percentile and falling within the Very Elevated score range.

The Total Score is an equally weighted composite of the ASRS Adult Scales (Social/ Communication and Unusual Behaviors), and each scale must be examined separately to obtain a more complete view of the individual.

Ratings on the Social/Communication scale indicate the extent to which verbal and nonverbal communication is used appropriately to initiate, engage in, and maintain social contact.  Results on this scale yielded a T-score of 80 (90% Confidence Interval = 73–82), which is ranked at the 99th percentile and falls in the Very Elevated score range.

Treatment Scales that comprise the Social/Communication ASRS Adult Scale include the Socialization and Social/Emotional Reciprocity scales.

Ratings on the Socialization scale indicate the individual's willingness and capacity to successfully engage in activities that develop and maintain relationships with others. Ratings on this scale yielded a T-score of 80 (90% Confidence Interval = 70–82), which is ranked at the 99th percentile and falls in the Very Elevated score range.

Ratings on the Social/Emotional Reciprocity scale indicate the individual's ability to provide an appropriate emotional response to another person in a social situation.  Ratings on this scale yielded a T-score of 75 (90% Confidence Interval = 64–77), which is ranked at the 99th percentile and falls in the Very Elevated score range.

Ratings on the Unusual Behaviors scale indicate the level of tolerance and reaction to routine changes and sensory stimuli, exhibition of apparently purposeless and stereotypical behaviors, engagement in physical behaviors that may be self-harmful, and demonstration of compensatory social-management behaviors.  Ratings on this scale yielded a T-score of 73 (90% Confidence Interval = 68–76), which is ranked at the 99th percentile and falls in the Very Elevated score range.

Treatment Scales that comprise the Unusual Behaviors ASRS Adult Scale include the Atypical Language, Stereotypy, Behavioral Rigidity, Sensory Sensitivity, Self-Injurious Behaviors, and Camouflaging scales.

Ratings on the Atypical Language scale indicate the extent to which the individual can utilize spoken communication in a structured and conventional way. Ratings on this scale yielded a T-score of 81 (90% Confidence Interval = 69–82), which is ranked at the 99th percentile and falls in the Very Elevated score range.

Ratings on the Stereotypy scale indicate the extent to which the individual engages in apparently purposeless and repetitive behaviors. Ratings on this scale yielded a T-score of 75 (90% Confidence Interval = 64–77), which is ranked at the 99th percentile and falls in the Very Elevated score range.

Ratings on the Behavioral Rigidity scale indicate the extent to which the individual tolerates changes in their environment, routines, activities, or behaviors. Ratings on this scale yielded a T-

score of 69 (90% Confidence Interval = 59–72), which is ranked at the 97th percentile and falls in the Elevated score range.

Ratings on the Sensory Sensitivity scale indicate the individual's level of tolerance for certain experiences sensed through touch, sound, vision, smell, or taste. Ratings on this scale yielded a T-score of 71 (90% Confidence Interval = 61–74), which ranks at the 98th percentile and falls within the Very Elevated score range.

Ratings on the Self-Injurious Behaviors scale indicate the extent to which the individual engages in physical actions towards themselves that may cause harm. Ratings on this scale yielded a T-score of 63 (90% Confidence Interval = 50–66), which ranks at the 90th percentile and falls within the Slightly Elevated score range.

Ratings on the Camouflaging scale indicate the extent to which the individual engages in behaviors that may be unnatural to them and aimed at masking or compensating for their symptoms, including efforts to blend in, conform, or manage social interactions. Ratings on this scale yielded a T-score of 77 (90% Confidence Interval = 65–78), which is ranked at the 99th percentile and falls in the Very Elevated score range.

The Social/Communication scale is significantly higher than the Unusual Behaviors scale, indicating that the Total Score should be de-emphasized, while problems in specific behavioral areas relating to social/communication should be emphasized.

Ratings on the DSM/ICD Scale indicate how closely the individual's symptoms match the DSM and ICD criteria for Autism Spectrum Disorder. Ratings on this scale yielded a T-score of 74 (90% Confidence Interval = 67–77), which is ranked at the 99th percentile, and falls in the Very Elevated score range. This pattern of scores indicates that the individual has symptoms directly related to the DSM/ICD diagnostic criteria, and is exhibiting many of the associated features characteristic of Autism Spectrum Disorder.

**The Autism Spectrum Quotient**
The Autism Spectrum Quotient was administered to Mr. Principe. The test is a diagnostic questionnaire designed to measure an individual's expression of Autism Spectrum traits through their subjective self-assessment. He had a score of 34 out of 50, which indicates having significant Autistic traits. On the test, Mr. Principe reported preferring to do things on his own rather than with others, being socially inappropriate, having problems in social situations, and not understanding jokes.

## COLLATERAL INTERVIEWS
**CAROLINE CAMPBELL**
Caroline Campbell is Vincent Principe's half-sister. She stated that she is 14 years younger than Vincent and that at age three, she went to live with her father, while Vincent lived with their mother. She said that as a result, the information that she could provide about him was limited.

Ms. Campbell reported that Vincent has Asperger's Syndrome. She stated that he is smart but has difficulty in social situations and connecting with others. She described him as being a loner.

She also noted that he has issues with OCD (Obsessive Compulsive Disorder), including being obsessed with cleanliness and not liking his food touching on a plate. In addition, she recalled that he would take apart mechanical devices and put them back together.

Ms. Campbell reported that Vincent received disability benefits due to him having Asperger's. She indicated that he was unable to maintain employment due to his social problems.

Ms. Campbell reported that Vincent's father had Schizophrenia. She stated that Vincent was not close with his father. She said that Vincent's sister, Liana, has been diagnosed with Bipolar Disorder.

Ms. Campbell reported that she believed that Vincent moved to the Philippines due to it being less expensive to live. She noted that he was unable to work and was living off his disability benefits.

Ms. Campbell reported that she is unaware of Vincent ever acting in a sexually inappropriate manner.

**VICTORIA GOSSELIN**
Victoria Gosselin is Vincent Principe's mother. She reported that she is 75 and has memory problems. She stated that Vincent was diagnosed with Asperger's. She said that she knew something was wrong with him very early on. She stated that he had language delays, would say and do inappropriate things, and had no friends.

Ms. Gosselin reported that as a teenager, his inappropriate behavior continued and he made bad decisions which got him in trouble with the law.

Ms. Gosselin reported that Vincent's father had a mental illness, did not pay child support, and had no relationship with Vincent.

Ms. Gosselin reported that she could not recall information regarding Vincent's history of mental health treatment.

Ms. Gosselin reported that she is unaware of Vincent ever acting in a sexually inappropriate manner.

**RECORDS**
**STURDY MEMORIAL HOSPITAL**
**10/09/2011 – Psychiatric Consultation/Evaluation Report**
Mr. Principe reported increased depression and anxiety with passive suicidal ideation and increased anxiety. He said that he is struggling with daily responsibilities, finances, and relational issues. He requested day treatment with an eventual stepdown to outpatient treatment.

Mr. Principe reported that he was a former Department of Mental Health client who originally received services at the Bridgewater State Hospital, where he was treated between 1999 and 2003. He stated that following being treated at the State Hospital, he was treated at the Westboro

State Hospital for three years.  He said he then stepped down to a halfway house and then to community housing in Dedham until 2009.  He has been living in his own apartment since then and living off of disability benefits.  He stated that he has not received any treatment since 2009.  He indicated that he has been diagnosed with Asperger's and depression.

## SOCIAL SECURITY DISABILITY
Mr. Principe's diagnoses include Affective Disorders and Autism and Other Pervasive Developmental Disorders.

## MITIGATING CIRCUMSTANCES

## MENTAL AND EMOTIONAL HEALTH
Mr. Principe is diagnosed with Autism Spectrum Disorder, requiring substantial support, without accompanying intellectual impairment.  He is also diagnosed with Major Depressive Disorder, recurrent, moderate/severe.  His diagnoses are supported by medical records, self-report, collateral interviews, and psychological testing.

*It is noted that he has previously been diagnosed with Asperger's Syndrome.  When the DSM-5 was developed in 2013, replacing the DSM-IV-TR, the diagnosis of Asperger's Syndrome was merged into the diagnosis of Autism Spectrum Disorder.*

Autism Spectrum Disorder (ASD) is a serious neurodevelopmental disorder that impairs an individual's ability to communicate and interact with others.  Individuals with ASD exhibit significant deficits in social communication and social interaction.  They display difficulty processing and responding to social cues. They suffer from the effort required in social situations and often experience depression and anxiety due to their social deficits and having to consciously calculate what is socially intuitive for most individuals.  ASD is also associated with restricted, repetitive behaviors, interests, and activities.  ASD causes significant impairment in social, occupational, and other areas of functioning.

Much of the deviant or sexual offending behavior exhibited among those with ASD is often a manifestation of their ASD symptoms and not malice.[1]  Individuals with ASD tend to have delayed social maturity, which may lead to social rejection and isolation.  As a result, they exhibit immature social and emotional functioning, lacking the appropriate knowledge and skills for appropriate sexual relationships, and often do not have the same sexual outlets throughout their development.  This can result in deviant sexual behavior.

In addition, in order to avoid personal social relationships and sexual intimacy, individuals with ASD may gravitate to internet pornography and child pornography.  Also, their lack of social

---

[1] Mogavero, M.C., (2016),"Autism, sexual offending, and the criminal justice system", Journal of Intellectual Disabilities and Offending Behaviour, Vol. 7 Iss 3 pp. 116 – 126.

State of Florida vs. Vincent Anthony Principe
Case Number: 2:26-11-KCD-DNF

perceptiveness may result in not being able to accurately determine the age of those in the pornographic images[2] or understand and appreciate the abuse of the children in the images.[3] It is noted that one study indicated that 24% of high-functioning individuals with ASD reported paraphilic sexual fantasies or behaviors, including voyeurism, fetishism, sadomasochism, and sexual interest in children[4]

In addition to ASD, Mr. Principe is experiencing significant depression.  His depression appears related to his ASD and the long-term consequences on self-esteem of feeling unaccepted and misunderstood, the mental exhaustion from trying to succeed socially, feelings of loneliness, and being teased, bullied, and ridiculed by peers.

_____

Scot D. Machlus, Ph.D., ABPP
Board Certified in Clinical Psychology

---

[2] Mahoney, M.J. (2009), "Asperger's syndrome and the criminal law: the special case of child pornography", available at: www.harringtonmahoney.com/documents/Aspergers%20Syndrome%20and%20the%20Criminal%20Law%20v26.pdf (accessed July 14, 2015).

[3] Woodbury-Smith, M.R., Clare, I.C.H., Holland, A.J., Kearns, A., Staufenberg, E. and Watson, P. (2005), "A case-control study of offenders with high functioning autistic spectrum disorders", The Journal of Forensic Psychiatry & Psychology, Vol. 16 No. 4, pp. 747-63.

[4] Fernandes, L.C., Gillberg, C.I., Cederlund, M., Hagberg, B., Gillberg, C., & Billstedt, E. (2016).  Aspects of sexuality in adolescents and adults diagnosed with autism spectrum disorders in childhood.  Journal of Developmental Disorders, 46, 3155-3165.

11